**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TEAMSTERS LOCAL 639 EMPLOYERS HEALTH TRUST, ET AL. | ) ) ) | |
| Plaintiffs, | ) ) | CASE NO. 1:13-cv-00833-RMC |
| vs. | ) ) | |
| ROBERT HILEMAN, ET AL. | ) ) | |
| Defendants. | ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ROBERT HILEMAN**
**AND GARY HILEMAN'S MOTION TO DISMISS**

Defendants Robert Hileman and Gary Hileman (hereinafter collectively referred to as "the Hilemans"), by and through their undersigned counsel, hereby file this Memorandum of Law in support of their Motion to Dismiss and state as follows:

**INTRODUCTION**

In this matter, Plaintiffs have brought suit against the Hilemans under various provisions of ERISA pertaining to: 1) audit fees and liquidated damages resulting from alleged unpaid contributions of United Crane Sales, Inc. ("United Crane"); and, 2) withdrawal liability. However, even accepting the facts alleged in the Complaint as true, the Complaint fails to set forth a claim for which relief can be granted against the Hilemans. The Hilemans are not properly subject to personal jurisdiction in the District of Columbia. Also, as a matter of law, an individual cannot be held liable for the debts of the corporation based merely by virtue of having served as a director. As set forth in greater detail below, the Hilemans alternatively request that the claims asserted against them be dismissed with prejudice inasmuch as the Complaint fails to state a claim.

**STATEMENT OF RELEVANT FACTS**

As set forth in the Complaint (ECF No. 1), this lawsuit pertains to alleged liability owed to two plans administered pursuant to ERISA in connection with Teamsters Local 639. Specifically, the two plans in question are Teamsters Local 639 Employers Health Trust (hereinafter, "the Health Fund"), which exists to provide health care benefits to covered employees, and Teamsters Local 639 Employers Pension Trust (hereinafter, "the Pension Trust"), which exists to provide pension benefits to covered employees. ECF No. 1 at ¶¶ 4 and 6. The Plaintiffs in this action include the Health Fund, the Pension Trust, and individual trustees of both plans (hereinafter collectively referred to as, "Plaintiffs"). ECF No. 1 at ¶¶ 5 and 7.

Plaintiffs contend that United Crane failed to pay liquidated damages to the Health Fund and the Pension Plan totaling $1,236.92 (ECF No. 1 at ¶ 38) and failed to pay withdrawal liability pursuant to ERISA to the Pension Fund (ECF No. 1 at ¶ 42). The Complaint alleges that United Crane filed Articles of Dissolution on April 15, 2013. ECF No. 1 at ¶ 8. In September 2011, long before dissolution, "United Crane transferred all or substantially all of its property an assets to UCR [Acquisition, LLC]." ECF No. 1 at ¶ 33. United Crane did not receive any cash consideration for this transfer, but rather, "In consideration of the transfer, UCR [Acquisition, LLC] assumed certain obligations of United Crane." ECF No. 1 at ¶ 34; *see also*, ECF No. 1 at Exhibit 8.

Although United Crane was not made a party to this case and transferred all of its assets to UCR Acquisition, LLC in September 2011, Plaintiffs have instituted a cause of action against, Robert and Gary Hileman, whom Plaintiffs allege, upon "information and belief," were directors of United Crane. ECF No. 1 at ¶ 9. However, the Complaint does assert any facts pertaining to

2

the Hilemans' involvement with United Crane. *Id.* The Complaint is devoid of any factual allegations pertaining to any services the Hilemans may have provided to United Crane and, specifically, does not allege that either of the Hilemans managed United Crane's assets or that the Hilemans are "employers" as defined by the applicable sections of ERISA. *Id.*; *see also*, ECF No. 1 at ¶ 13 (alleging only that United Crane is an "employer"). Likewise, the Complaint does not allege that, either following the transaction with UCR or at dissolution, there were any assets left for the Hilemans or any member of United Crane's Board of Directors to manage or distribute. ECF No. 1 at ¶ 9. In fact, the Complaint alleges that United Crane transferred all of its assets in September 2011. ECF No. 1 at ¶ 33. Furthermore, the Complaint does not allege that, following dissolution, any assets at all were distributed to shareholders instead of being used to attempt to satisfy claims that creditors made against United Crane. ECF No. 1 at ¶ 9. Instead, the Complaint specifies addresses for the Hilemans and gratuitously asserts that directors may be sued in the name of the corporation. ECF No. 1 at ¶¶ 9 – 11.

The Complaint alleges that United Crane employed individuals who were represented by Teamsters Local 639 and therefore, by virtue of a collective bargaining agreement, subject to making certain contributions to the Pension Fund and the Health Fund. ECF No. 1 at ¶ 14; *see also* ECF No. 1 at ¶¶ 15 – 22. With respect to the alleged unpaid contributions, Plaintiffs allege that an audit determined that United Crane owed $1,860.00 to the plans. ECF No. 1 at ¶ 23. Plaintiffs concede that these monies were subsequently paid by United Crane. ECF No. 1 at ¶ 24. However, Plaintiffs contend that a combined total of $1,236.92 in audit fees and liquidated damages were not paid by United Crane. ECF No. 1 at ¶¶ 23 – 24. In addition, Plaintiffs contend that United Crane withdrew from the Pension Fund as of March 31, 2011 and therefore owe $30,828.00 in withdrawal liability to the Pension Fund pursuant to section 4203(a) of

ERISA.  ECF No. 1 at ¶¶ 25 – 26.  The Plaintiffs allege that "United Crane has failed to make any payments in accordance with the payment schedule," and that the Pension Fund has notified United Crane of the nonpayment.  ECF No. 1 at ¶ 28.

**LEGAL STANDARD GOVERNING MOTIONS TO
DISMISS PURSUANT TO FED R. CIV. P. 12 (b) (6)**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b) (6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim.  Fed. R. Civ. P. 12 (b) (6).  *Youkelsone v. FDIC*, 910 F. Supp. 2d 213, 220 (D.D.C. 2012).  Federal Rule of Civil Procedure 8 (a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief..." which is sufficient, "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Fed. R. Civ. P. 8 (a) (1); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted).

The facts alleged in a complaint, "must be enough to raise a right to relief above the speculative level."  *Id*. Likewise, "a formulaic recitation of the elements of a cause of action will not do."  *Id*. Rule 8 (a) requires an actual showing and not just a blanket assertion of a right to relief.  *Id*. at 555 n.3.  "[A] complaint needs *some* information about the circumstances giving rise to the claims."  *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.,* 525 F.3d 8, 16 n.4, 381 U.S. App. D.C. 76 (D.C. Cir. 2008) (emphasis in original).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."  *Twombly*, 550 U.S. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal,* 556 U.S. 662,

4

678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I.   The Court Lacks Personal Jurisdiction over the Hilemans

The law regarding personal jurisdiction is well-established.  "To satisfy the requirements of due process, the nonresident defendant must have had sufficient 'minimum contacts' with the forum state to justify subjecting him to the exercise of personal jurisdiction by its courts." *Companhia Brasileira Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.3d 1127, 1130 (D.C. 2012) (*quoting Environmental Research Int'l, Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 811 (D.C. 1976)).  In order to determine if sufficient minimum contacts exist to create personal jurisdiction, the Court must determine the existence of either general jurisdiction or specific jurisdiction.  *See generally, Milliken v. Meyer*, 311 U.S. 457, 462 (1940); *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).  Akin to the pleading requirements set forth in the Supreme Court's rulings in *Iqbal*, 129 S.Ct. 1937, *supra*, and *Twombly*, 550 U.S. 544, *supra*, "Plaintiffs must plead facts sufficient to establish this Court's personal jurisdiction over each defendant in one of two forms: general or all-purpose jurisdiction, and specific or case-linked jurisdiction."  *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 118 (D.D.C. 2012) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  Where an issue of personal jurisdiction is raised, "the burden is on the plaintiff to establish that this Court has personal jurisdiction over defendants and allege specific facts upon which personal jurisdiction may be based."  *Blumenthal v. Drudge*, 992 F. Supp. 44, 53 (D.D.C. 1998).

### A. Plaintiffs Have Failed to Assert Facts that Could Establish General Jurisdiction

Courts have routinely held that the standard for establishing general jurisdiction is high. As explained by this court in *Bond v. ATSI/Jacksonville Job Corps Ctr.*, 811 F. Supp. 2d 417, 422 (D.D.C. 2011):

> General jurisdiction, by contrast, exists where a defendant maintains sufficiently systematic and continuous contacts with the forum state, regardless of whether those contacts gave rise to the claim. *Helicopteros*, 466 U.S. at 414 n.9. First, general jurisdiction must comport with D.C. Code § 13-422, which provides that a "District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." § 13-422; *Cornell v. Kellner*, 539 F. Supp. 2d 311, 314 n.7 (D.D.C. 2008). Second, general jurisdiction must also comport with constitutional guarantees of due process. *Int'l Shoe Co.*, 326 U.S. at 316. Those guarantees are satisfied if a defendant has such continuous and systematic contacts with the forum that the defendant could reasonably foresee being hauled into court in that forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

In the Hilemans' case, Plaintiffs have "not pled any jurisdictional facts to show that defendants fall under any category of D.C. Code § 13-422 or have any systematic and continuous contacts with this forum." *Id.* at 423. The Plaintiffs cannot claim that the Hilemans were organized under the laws of the District of Columbia because the Hilemanss are individuals. The Complaint lacks any factual allegations regarding the Hilemans' principal place of business, and it concedes that the Hilemans are domiciled in Maryland. ECF No. 1 at ¶¶ 10 and 11.

Moreover, Plaintiff has made no allegations pertaining to any "continuous and systematic" contact between the Hilemans and the District of Columbia. The mere allegation that the Hilemans served on United Crane's Board is insufficient because the Hilemans and United Crane are distinct persons as a matter of law. *Edenbaum v. Schwarcz-Osztreicherne*, 885

6

A.2d 365, 376, 165 Md. App. 233, 253, (2005); *see e.g., Penick v. Frank E. Basil, Inc.*, 579 F. Supp. 160, 165 (D.D.C. 1984) ("Under District of Columbia and general principles of corporation law, shareholders of a corporation generally are not liable on a contract made by the corporation; the "corporation is an entity separate and distinct" from its shareholders."). There is no allegation that United Crane or, more importantly, the Hilemans engaged in any "continuous and systematic" contact in the District of Columbia. *Bond*, 811 F. Supp. 2d at 423. Accordingly, Plaintiffs have failed to plead facts that, if proven true, could demonstrate that the Hilemans have sufficient contacts with Washington, D.C. to be subjected to general jurisdiction.

**B.**      **The Complaint is Devoid of Any Allegations That, If Proven True, Could Establish Specific Jurisdiction**

The Complaint also fails to set forth facts that could establish specific jurisdiction. Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851, 79 U.S.L.W. 4696 (2011). In the District of Columbia, since "there is no applicable federal long-arm statute, jurisdiction over [a defendant] must be determined by reference to District of Columbia law," specifically the D.C. long-arm statute codified at D.C. Code § 13-423. *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).

The only prong of the D.C. long-arm statute that might be applicable to this matter is the provision providing specific jurisdiction relating to the transaction of business in the District of Columbia. *See* D.C. Code § 13-423(a) (1). Accordingly, Plaintiffs must plead facts that, if proven true, would establish that the Hilemans transacted business in the District of Columbia, that this lawsuit arises out of that business, and that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co.*, 326 U.S. at 316; *see also, Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985); *Lans v. Adduci*

*Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 271 (D.D.C. 2011); *Gowens v. DynCorp*, 132 F. Supp. 2d 38, 41 (D.D.C. 2001).   In particular, D.C. Code § 13-423 (b) requires a significant connection between the claim and alleged contact with the forum.   *World Wide Minerals Ltd. v. Republic of Kazakhstahn*, 116 F. Supp. 2d 98, 106 (D.D.C. 2000).

The Complaint fails to allege facts that would establish the Hilemans "transacted business" in the District of Columbia.  The Complaint's only germane allegations are conjecture that the Hilemans served as members of the Board of Directors of United Crane; a dissolved Maryland corporation that had a principal place of business in Maryland.  ECF No. 1 at ¶ 9.  This allegation is nowhere close to an "actual showing" that the Hilemans individually transacted business in the District of Columbia.  Within the context of a specific jurisdiction analysis, acts of a corporation cannot be arbitrarily attributed to individuals.  *Bond*, 811 F. Supp. 2d at 423 (noting that an argument made in an attempt to establish individuals "transacted business" in the District of Columbia failed because the plaintiff collapsed individual defendants into a conclusory allegation including the corporation).  An individual's contact with the forum state is, "not to be judged according to their employer's activities there."  *Calder v. Jones*, 465 U.S. 783, 790 (1984) (finding specific jurisdiction over the individuals did exist because of their own actions, not mere association with a corporation).  *See also*, *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding that considering the contacts with the forum of the defending parties together, "is plainly unconstitutional....The requirements of *International Shoe* [ ] must be met as to each defendant over whom a state court exercises jurisdiction.")

Accordingly, in light of the fact that the only allegations in the Complaint pertaining to the Hilemans contend that the Hilemans are domiciled in Maryland and served on United

Crane's Board of Directors, the Complaint fails to set forth fact sufficient to establish that the Hilemans are subject to specific jurisdiction in the District of Columbia.

**II.      The Complaint Fails to State a Viable Claim Against the Hilemans and Should be Dismissed**

In the alternative, should the Court find that it may exercise personal jurisdiction over the Hilemans, it should nonetheless find that the Complaint fails to state a claim upon which the Court may grant the Plaintiffs any relief.  Simply put, the Complaint fails to set forth facts that establish the Hilemans' individual liability for a debt allegedly owed by United Crane. Moreover, even if such a factual basis exists, such liability would be capped at the amount of money that United Crane distributed to shareholders during the winding up process.  The Complaint fails to aver that such a distribution took place.  While it appears as though, that the Plaintiffs attempt to assert claims against the Hilemans under Maryland corporate law, the provisions of the Maryland Code which govern dissolution and director liability preclude any finding of individual liability against the Hilemans as a matter of law.

**A.      The Complaint Fails to Allege a Basis for Individual Liability**

It is generally understood that absent specific individual conduct an individual director, manager, or owner of a corporation will not be held individually liable for the debts of the corporation. *Edenbaum, supra,* 885 A.2d at 376, 165 Md. App. at 253; *see e.g., Penick, supra*, 579 F. Supp. at 165.

In the specific context of dissolution of a corporation, Maryland law makes very limited exceptions to this general applicability of the corporate shield.  At the onset, Maryland Code, Corporations and Associations Article Section § 3-410 (a) ("Powers of directors in voluntary dissolution") designates a Maryland corporation's directors as the managers of the corporation during a voluntary dissolution, solely for the purpose set forth in § 3-408 (b) of that same

subchapter.    In dissolution, section 3-410 (b) of the Corporations and Associations Article articulates the general powers held by the directors.    In summary, these powers are: (1) to marshall the assets of the corporation; (2) to apply the assets to the debts of the corporation; and, if possible; thereafter, (3) to distribute the remaining assets among the shareholders.    Md. Corps & Ass'ns §3-410 (b).    Subsection (c) of Section 3-410 sets out the specific powers held by the directors during dissolution:

> (c) Specific powers. -- The directors may:
>
> (1) Carry out the contracts of the corporation;
>
> (2) Sell all or any part of the assets of the corporation at public or private sale;
>
> (3) Sue or be sued in the name of the corporation; and
>
> (4) Do all other acts consistent with law and the charter of the corporation necessary or proper to liquidate the corporation and wind up its affairs.

Md. Corps & Ass'ns §3-410 (c).    Notably, Section 3-410 (c) (3) states the directors can, "sue or be sued *in the name of the corporation."  Id.*, *see also, id. at* §3-408 (b) ("Winding up") ("*The corporation continues to exist* for the purpose of paying, satisfying, and discharging any existing debts or obligations, collecting and distributing its assets, and doing all other acts required to liquidate and wind up its business and affairs.") (emphasis added).    Here, Plaintiffs have not sued the Hilemans in the name of the corporation, but rather in their individual capacities.

Significantly, because there are instances where a corporation's assets are insufficient to pay all creditors, Section 3-410 does not require that "all" debts of a corporation must be paid. Most importantly, Section 3-410 does not state that in the event that some corporate debts go unpaid, the directors are subject to personal liability for those debts.

10

Subsection (d) of Section 3-410 is also pertinent to this matter because it specifically states that a director's conduct in exercising his powers during dissolution is governed by Maryland's adaptation of the business judgment rule, which is set forth in Section 2-405.1 of the Corporations and Associations Article.  Section 2-405.1, states in part:

> 2-405.1.  Standard of care required of directors
>
> (a) In general. -- A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves:
>
> (1) In good faith;
>
> (2) In a manner he reasonably believes to be in the best interests of the corporation; and
>
> (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.
>
> \*      \*      \*      \*      \*
>
> (c) Liability limited. -- A person who performs his duties in accordance with the standard provided in this section ***shall have the immunity from liability*** described under § 5-417 of the Courts and Judicial Proceedings Article.

Md. Corps & Ass'ns §2-405.1 (emphasis added); *see id* at 2-405.1 (d) (specifying limitations on director duties).  As a matter of law, "An act of a director of a corporation is presumed to satisfy the standards of subsection (a) of [§2-405.1]."  Md. Corps & Ass'ns §2-405.1 (e).

Finally, subsection (c) of section 2-405.1 contains an express immunity from liability of directors for corporate obligations.  That is, Subsection (c) expressly references Section 5-417 of the Courts and Judicial Proceedings Article, of the Annotated Code of Maryland.  ("Immunity -- Directors of corporations generally").  Section, 5-417 states:

> A person who performs the duties of that person in accordance with the standard provided under § 2-405.1 of the Corporations

> and Associations Article *has no liability by reason of being or having been a director of a corporation.*

Md. Code Ann. Courts & Jud. Proc. §5-417 (emphasis added). *See e.g., Edenbaum,* 885 A.2d at 376, 165 Md. App. at 252-53 (2005).

The Complaint barely alleges any facts at all with respect to the Hilemans, much less any facts which would indicate that the Hilemans should bear individual liability for the alleged corporate debt. The Complaint contains no allegations that would suggest that the Hilemans violated the business judgment rule, or facts that would overcome Section 2-405.1 (e)'s presumption that the Hilemans comported with the business judgment rule. Likewise, the Complaint makes no claims that would overcome the immunity that Section 2-405.1 (c) and Section 5-417 of the Courts & Judicial Proceedings Article of the Maryland Annotate Code confer upon the Hilemans. Finally, there are no allegations of fraud or other wrongdoing that would overcome the statutory liability shield that protects the Hilemans. For these reasons, the Court should dismiss the Complaint for failure to state a claim.

### B.   Even If the Hilemans Could be Sued, There Are No Recoverable Damages

Finally, assuming *arguendo* that the Complaint was free of the fatal flaws mentioned above, the fact remains that the Hilemans did not receive anything from the liquidation of United Crane. ECF No. 1 at ¶ 33. The Complaint states that UCR purchased the assets of United Crane, and that the consideration paid was the assumption of certain of United Crane's liabilities. *Id*. The Complaint does not allege that the Hilemans received any proceeds from the transaction, or that any shareholders received a distribution at any time. This is significant because even if there had been some relevant factual basis for asserting Plaintiffs' claim against the Hilemans, as a matter of law, the liability of a director and/or trustee in dissolution is limited to the assets or

proceeds from liquidation of assets that come into the directors own hands or control. *See* Fletcher Cyc. Corporations § 3081 (Perm Ed.).

In this regard, this case is analogous to *Georgetown College v. Madden*, 505 F. Supp. 557 (D. Md. 1980). *Madden* involved claims against a forfeited corporation, and, after concluding that Maryland applies the statutory provisions regarding director liability from the dissolution statute in the forfeitrue context, held that a director or of a dissolved corporation "would only be liable [to creditors] to the extent that assets still remain." *Id*. at 603. In doing so, the court stated that a director can only be required, "to satisfy corporate debts to the extent of the corporate assets." *Id*. at 603. In the case at bar, there is no allegation that the Hilemans took any distribution from the transaction, and, in good faith, the Plaintiffs could not make such an allegation. Likewise, the Plaintiffs allege that United Crane has no assets inasmuch as the Complaint alleges that all assets were transferred to UCR. ECF No. 1 at 34; *see also,* ECF No. 1 at Exhibit 8. Because there is no dispute that Hilemans received nothing from the transaction, if there were some factual basis for liability against, it would be capped at zero.

## CONCLUSION

WHEREFORE, Defendants Robert Hileman and Gary Hileman, for the reasons set forth herein, respectfully pray this Court enter an order DISMISSING the Complaint with prejudice.

Respectfully submitted,

/s/ Eric Pelletier
Eric Pelletier (DC Bar 454794)
Offit Kurman, P.A.
4800 Montgomery Avenue, 9th Floor
Bethesda, MD 20814
Phone: (240) 507-1739
Fax: (240) 507-1735
E-Mail epelletier@offitkurman.com

13

/s/ Russell B. Berger

Russell B. Berger (Bar No. MD28512)
Offit Kurman, P.A.
300 E. Lombard Street, Suite 2010
Baltimore, MD 21202
Phone: (410) 209-6449
Fax: (410) 209-6435
E-Mail: rberger@offitkurman.com
*Attorneys for Defendants*
*Robert Hileman and Gary Hileman*

## CERTIFICATE OF SERVICE

THIS WILL CERTIFY that on this 16th day of August 2013, a copy of the foregoing was

served via ECF on the following:

Lauren B. Powell (Bar No. 1008301)
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, NW, Suite 400
Washington, DC 20036
*Attorney for Plaintiffs*


/s/ Eric Pelletier

Eric Pelletier


4848-8936-0661, v. 2