# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TEAMSTERS LOCAL 639 EMPLOYERS, ) <br> HEALTH TRUST, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROBERT HILEMAN, *et al.*, ) <br> ) <br> Defendants. ) | Civil Action No. 13-833 (RMC) |

## MEMORANDUM OPINION

In 2011, a now-defunct Maryland corporation failed to contribute to two employee benefit plans as required by certain collective bargaining agreements and trust declarations. The trustees of both plans have sued Gary and Robert Hileman, two residents of Maryland who served as directors of the corporation, for overdue contributions and related assessments. Messrs. Hileman move to dismiss for lack of personal jurisdiction and failure to state a claim. While personal jurisdiction appears to be lacking only over Gary Hileman, the Complaint fails to state a claim against either man because they can be sued only in the name of the corporation and not as individuals. Thus, the motion to dismiss will be granted and Messrs. Hileman will be dismissed from this suit in their individual capacities.

## I. FACTS

Representing the unionized workers at United Crane Sales, Inc. (United Crane) prior to the corporation's demise, Teamsters Local 639 entered into a collective bargaining agreement with United Crane that required the company to make contributions on behalf of covered employees to two multi-employer benefit plans: Teamsters Local 639 Employers

1

Pension Trust (Pension Plan) and Teamsters Local 639 Employers Health Trust (Health Plan). Both Funds are covered by the Employee Retirement Income Security Act (ERISA) of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.*, and are administered from Washington, D.C.

An audit in September 2011 revealed that United Crane was delinquent in its contributions to both Funds. As a result, the Health and Pension Funds jointly assessed United Crane $1,410.92 in audit fees and liquidated damages pursuant to section 6.5 of each Fund's Agreement and Declaration of Trust. Compl. [Dkt. 1], Ex. 2 (Pension Fund) [Dkt. 1-3]; Ex. 3 (Health Fund) [Dkt. 1-4]. Also in September 2011, United Crane transferred all, or a substantial portion, of its property and assets to UCR Acquisition, LLC (UCR). Within two months, United Crane had paid all outstanding amounts due to the Funds with the exception of the assessment for audit fees and liquidated damages. Compl. ¶¶ 24, 33.

The Complaint also asserts that by March 31, 2011, United Crane had withdrawn completely from the Pension Plan within the meaning of ERISA, *see* 29 U.S.C. § 1383(a). The Pension Plan subsequently notified United Crane of this determination on October 2, 2012, and demanded payment of $30,828.00 in withdrawal liability. This sum has yet to be paid. Approximately six months later, United Crane filed Articles of Voluntary Dissolution with the Maryland Secretary of State.

On June 4, 2013, the Health and Pension Funds and their Trustees (collectively, Trustees) filed suit against Robert and Gary Hileman.[1] Trustees intentionally sue both Hilemans in their individual capacities because they are former directors of United Crane. Opp'n [Dkt. 13] at 5 (asserting that directors of dissolved corporations may be sued "in their own names as

---

[1] UCR was a named defendant when the Complaint was filed, but Plaintiffs moved to dismiss without prejudice all claims against UCR. On August 13, 2013, the Court dismissed UCR without prejudice. *See* Aug. 13, 2013 Minute Order.

trustees of the corporation.") Trustees state that "[u]pon information and belief," Gary and Robert Hileman are residents of Maryland and were directors of United Crane. Compl. ¶¶ 9-11. Trustees demand that Messrs. Hileman be held jointly and severally liable for money due and owing to both Funds, in the amounts of $1,410.92 in audit fees and liquidated damages; $30,828.00 in withdrawal liability to the Pension Fund; at least $6,165.60 in liquidated damages on unpaid withdrawal liability to the Pension Fund; and interest, attorneys' fees, and costs as ERISA permits. *Id.* at 13-14. Trustees also seek injunctive relief. Messrs. Hileman move to dismiss under Federal Rules of Civil Procedure (FRCP) 12(b)(2) and (b)(6). *See* Mot. to Dismiss [Dkt. 12]. Plaintiffs oppose.

## II. LEGAL STANDARDS

Gary and Robert Hileman challenge Trustees' suit on two grounds. They contend that the Complaint does not state sufficient facts to establish that they, as residents of the State of Maryland, are subject to this Court's jurisdiction, and that Trustees have failed to state a claim by suing them in their individual capacities.

### A. Jurisdiction

The jurisdiction of federal courts is limited. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The validity of an order of a federal court depends upon that court[] having jurisdiction over both the subject matter and the parties." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171-72 (1938); *Thompson v. Whitman*, 18 Wall. 457, 465 (1874)). Here, there is no dispute that the Court has subject matter jurisdiction over this matter, which arises under federal law. *See* 28 U.S.C. § 1331. The parties do contest, however, *in personam*, or personal, jurisdiction.

On a motion to dismiss pursuant to FRCP 12(b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001). Bare allegations and conclusory statements are insufficient. *See id.* In determining whether a factual basis for personal jurisdiction exists, a court resolves factual discrepancies in the record in favor of the plaintiff, *Crane*, 894 F.2d at 456, with the caveat that the court need not treat all of the plaintiff's allegations as true. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 77 (D.D.C. 2004) (internal quotations and citation omitted).

### B. Failure to State a Claim

A motion to dismiss for failure to state a claim challenges the adequacy of a complaint on its face, testing whether a plaintiff has stated a claim properly. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that a complaint must be sufficient to "'give [a] defendant fair notice of what the claim is and the grounds upon which it rests'" (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

In deciding a motion under FRCP 12(b)(6), a court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Yet, it "may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which [the court] may take judicial notice." *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). The court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## III. ANALYSIS

### A. Personal Jurisdiction

To establish personal jurisdiction over a non-resident of the forum, a federal court considers two separate issues. First, the court determines whether jurisdiction exists under the applicable long-arm statute and whether the plaintiff has served the defendant properly with a summons and a copy of the complaint. "Absent proper service of process, a [c]ourt may not exercise personal jurisdiction over the defendants named in the complaint." *Dominguez v. District of Columbia*, 536 F. Supp. 2d 18, 22 (D.D.C. 2008); *see also Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 514 (D.C. Cir. 2002) (federal courts may not assert jurisdiction over defendants "unless the procedural requirements of effective service of process are satisfied"). Although proper service can be waived, actual notice of a lawsuit is insufficient to constitute waiver and establish personal jurisdiction. *See Rowe v. District of Columbia*, 892 F.

Supp. 2d 174, 180 (D.D.C. 2012) (citing *Di Lella v. Univ. of the Dist. of Columbia David A. Clarke Sch. of Law*, Civ. No. 07-0747, 2009 WL 3206709, at *1 (D.D.C. Sept. 30, 2009)).

Second, a federal court must find that exercising its jurisdiction over a non-resident satisfies constitutional principles of due process. This analysis evaluates the defendant's "minimum contacts" with the forum to ensure that "'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations and citation omitted). In short, "'the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *GTE New Media Servs.*, 199 F.3d at 1347 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Because this Court sits in the District of Columbia and Gary and Robert Hileman reside in the State of Maryland, the Court must analyze separately whether it has personal jurisdiction over them.

**1. Service of Process as to Gary Hileman**

The docket does not reveal a basis for personal jurisdiction over Gary Hileman because there is no record to show that he has been served properly with a copy of the summons and Complaint.

FRCP 4 governs service of process. In serving an individual defendant, a plaintiff must deliver a copy of the summons and complaint to that individual personally; deliver it to an authorized agent; or leave a copy of the summons and complaint at the individual's "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e). FRCP 4(m) allows 120 days from the date a plaintiff files its complaint to complete service on a defendant. If a plaintiff fails to accomplish service in that time, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

The record does not show proper service on Gary Hileman. While the docket states that summonses were issued as to Gary Hileman *and* Robert Hileman on June 5, 2013, *see* Notice of Electronic Summons [Dkt. 3], only the summons to Robert Hileman has been attached to the record, *see* Summons [Dkt. 3-2]. Similarly, the proof of service entered on the docket on July 1, 2013, indicates that Robert Hileman, but not Gary Hileman, was served. *See* Proof of Service [Dkt. 5]. While Gary Hileman joined the motion to dismiss, his participation did not constitute a waiver of service, as explained below. Thus, were the Complaint not subject to dismissal for failure to state a claim, *see infra*, it would be dismissed as to Gary Hileman for failure to demonstrate timely service.

Insufficient service must be asserted when a motion to dismiss is filed or it is waived, *see* Fed. R. Civ. P. 12(g)(2), 12(h)(1), *unless* time remains for service to be perfected. "So long as the 120 day limit ha[s] not expired when the [defendant] file[s] [his] first 12(b) motion, [he] [is] under no obligation to point out the plaintiff's deficient service until after the deadline elapse[s]." *Candido v. District of Columbia*, 242 F.R.D. 151, 161 (D.D.C. 2007). This

exception to the general waiver rule controls here as to service on Gary Hileman. Trustees filed their Complaint on June 4, 2013, so that FRCP 4(m) afforded them until October 2, 2013 to serve both Hilemans. The motion to dismiss was filed on August 16, 2013, before the deadline was reached. Since Trustees had until October 2, 2013 to accomplish timely service, Gary Hileman could not move to dismiss for insufficient service in August and his joinder in the motion to dismiss has not waived his right to assert insufficient service.

### 2. Personal Jurisdiction as to Robert Hileman

Unlike Gary Hileman, Trustees properly served Robert Hileman. Further, despite his residence in Maryland and lack of contacts with the District of Columbia, Robert Hileman is subject to this Court's jurisdiction. Section 502(e)(2) of ERISA authorizes personal service "in any . . . district where a defendant resides or may be found" for a suit brought in "the district where the plan is administered." 29 U.S.C. § 1132(e)(2).[2] Section 502(e)(2) thus permits nationwide service of process, and, as noted above, both Funds are administered in Washington, D.C. "[T]he requirement of 'minimum contacts' with a forum state is inapplicable where the court exercises personal jurisdiction by virtue of a federal statute authorizing nationwide service of process." *SEC v. Bilzerian*, 378 F.3d 1100, 1106 n.8 (D.C. Cir. 2004) (citing *Briggs v. Goodwin*, 569 F.2d 1, 8-10 (D.C. Cir. 1977), *rev'd on other grounds sub nom.*, *Stafford v. Briggs*, 444 U.S. 527 (1980)). Accordingly, the question is whether "minimum contacts with the

---

[2] Section 502(e)(2) of ERISA states:

> [w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

8

*United States* suffice." *Id.* (emphasis added). Robert Hileman does not contend that he has insufficient contacts with the United States as a whole, and the Court finds that due process is not offended by exercising jurisdiction pursuant to ERISA's service of process provision.

### 3. Exercise of Personal Jurisdiction Prior to A Liability Determination

Robert Hileman further objects to the exercise of personal jurisdiction over him, arguing that ERISA does not contemplate individual liability for corporate directors and, therefore, personal jurisdiction should not attach to him. Jurists debate whether personal jurisdiction over a non-resident must be based on some evidence of ERISA liability. "Courts have reached differing conclusions as to whether some preliminary finding of potential liability is necessary before asserting personal jurisdiction pursuant to § 502(e) of ERISA," *Flynn v. R.D. Masonry, Inc.*, 736 F. Supp. 2d 54, 60 (D.D.C. 2010) (summarizing cases). Regardless of how that issue might be resolved on these facts, Robert Hileman's argument is, at best, premature. He could be liable to Trustees if, for instance, he received corporate assets in the dissolution that could be used to pay the debt to the Funds. The Court recognizes that Robert Hileman has argued that the dissolution of United Crane resulted in no assets to distribute and that he received none, but he supplies no affidavit or other evidence to support assertions put forth by his lawyers. The Court thus will turn to the question of liability.

### B. Directors' Personal Liability for ERISA Contributions

Trustees complain that Robert Hileman, as a former director of United Crane, is personally and individually liable for the corporation's ERISA debts. This contention is flawed. Section 6.5 of both the Pension Fund and the Health Fund specify that the "*Employer* shall be responsible only for making contributions that it is obligated to make," and ascribe penalties to a "defaulting *Employer*." Ex. 2 at 6; Ex. 3 at 6 (emphasis added). Both Funds identically define

9

"Employer" to include "any corporation partnership or individual that has a collective bargaining agreement with the Union, or has signed a participation agreement with the Trust providing for payments into the Trust Fund on behalf of any Employee or such Employer covered by such Agreement." Ex. 2 at 1; Ex. 3 at 1. The collective bargaining agreement at issue here was between United Crane and Teamsters Local Union 639, and neither Gary nor Robert Hileman was a signatory. *See* Compl., Ex. 1 (Collective Bargaining Agreement) [Dkt. 1-2]. Accordingly, there is no basis for finding that Robert Hileman constitutes a *company* or *employer* as those terms were used by the contracting parties.

Likewise, ERISA imposes withdrawal liability on "an employer [that] withdraws from a multiemployer plan." 29 U.S.C. § 1381(a). The law of this Circuit is clear that a corporate owner-officer is not personally liable for ERISA withdrawal payments absent a showing that he acted as an "alter ego" of the company or in a fashion that would warrant piercing the corporate veil. *Connors v. P & M Coal Co.*, 801 F.2d 1373, 1378 (D.C. Cir. 1986). The Complaint only alleges that Robert Hileman was a director of United Crane, and not that he was an owner-officer, shareholder, or otherwise held a controlling interest in the company. Even assuming the narrow scope of liability established in *P & M Coal* applies here, the Complaint does not allege that Robert Hileman acted as United Crane's alter ego or engaged in conduct that would justify piercing the corporate veil. There is, thus, no basis for finding ERISA jurisdiction over Trustees' claims against Robert Hileman in his personal capacity.

Trustees' arguments concerning the dissolution of United Crane under Maryland law do not save their lawsuit. They argue that "under Maryland law[,] once a corporation's existence has been terminated[,] directors of the corporation become trustees and may sue and be sued in their own name as trustees." Opp'n at 5-6 (citing *President & Dirs. of Georgetown Coll.*

*v. Madden*, 660 F.2d 91 (4th Cir. 1981) (applying Maryland law); *Newsom v. Caliber Auto Transfer of St. Louis, Inc.*, Civ. No. 09-954, 2009 WL 4506298 (S.D. Ill. Nov. 26, 2009) (applying Maryland law); *Cloverfields Improvement Ass'n v. Seabreeze Props., Inc.*, 373 A.2d 935 (Md. 1977); *Scott v. Seek Lane Venture, Inc.*, 605 A.2d 942 (Md. Ct. Spec. App. 1992); *Atl. Mill & Lumber Realty Co. v. Keefer*, 20 A.2d 178 (Md. 1941)). Trustees contend that "once a corporation is dissolved its corporate existence is effectively forfeited," and thereafter "directors become 'trustees for the benefit of creditors, stockholders, and members to the extent of [the] corporate assets coming into their hands upon dissolution.'" *Id.* (quoting *Callahan v. Clemens*, 41 A.2d 473, 476 (Md. 1945)). Specifically relying on *Callahan*, a 1945 decision, Trustees argue that United Crane's corporate status "was forfeited" upon dissolution "and Robert Hileman became a director-trustee." Opp'n at 6. In reliance on *Cloverfields*, a 1977 decision, Trustees argue that director-trustees may sue and be sued in their own names as trustees of the corporation. *Id.*

Trustees misapprehend Maryland statutes. Under Maryland law, as modified after the decisions cited by Trustees, voluntary dissolution and forfeiture of a corporate charter are distinct and separately codified concepts. Voluntary dissolution occurs when the directors of a corporation decide to cease business and terminate the affairs of a corporate entity. In contrast, forfeiture is an involuntary result that occurs when a corporation fails to comply with Maryland law and pay local taxes on corporate personal property. Maryland State Dept. of Assessments and Taxation, What It Means When a Business Is Not in Good Standing or Forfeited, http://www.dat.state.md.us/sdatweb/entitystatus.pdf (2012) (last visited Oct. 15, 2013) (on file with Court) ("'Forfeited' means the 'legal existence' of the entity has been relinquished and it is

11

usually for failing to make required Annual Report/Personal Property Return filings for prior years.").

Voluntary dissolution is governed by Md. Code Ann., Corps. & Ass'ns § 3-410. It applies here because United Crane was dissolved voluntarily. Section 3-410 specifies the powers of directors in voluntary dissolution to manage the business, collect its assets and pay its debts, and distribute remaining assets among stockholders. *Id.* Critically for present purposes, § 3-410 also specifies that until and unless a court appoints a receiver the directors of a dissolved corporation may "[s]ue or be sued *in the name of the corporation*." *Id.* (emphasis added). Directors of a dissolved corporation are held to the same standards of conduct as those of a going concern. *Id.* § 3-410(d). In contrast, forfeiture is governed by Md. Code Ann., Corps. & Ass'ns § 3-515. Unless a court appoints a receiver for a corporation that has forfeited its charter, the directors become trustees with "full title to all the assets of the corporation," *id.* § 3-515(b), and may "[s]ue or be sued *in their own names as trustees* or in the name of the corporation," *id.* § 3-515(c)(3) (emphasis added).

The distinction between directors of a dissolved corporation and director-trustees of a corporation that has forfeited its charter is not accidental. Prior to 2004, § 3-410 closely tracked § 3-515, reading as follows:

> (a) When a Maryland corporation is voluntarily dissolved, until a court appoints a receiver, *the directors of the corporation become the trustees of its assets for purposes of liquidation*.
> . . . .
> (c) The *director trustees* may:
>     . . . .
>     (3) Sue or be sued *in their own names as trustees or* in the name of the corporation . . . .

1975 Md. Laws ch. 311, § 2 (amended 2004) (emphasis added). The Maryland legislature in 2004 eliminated the italicized language, thereby evidencing its intent to shield directors of a

12

voluntarily dissolved corporation from individual liability for corporate debt. Conspicuously, the provisions governing forfeiture for failure to comply with Maryland law, codified at § 3-515, were not similarly amended.

Thus, Trustees' argument that they can assess individual liability against corporate directors post-dissolution is no longer supported by Maryland law. With a single exception, Trustees cite case law that predates the 2004 amendment to § 3-410. *Newsom*, a 2009 decision by the U.S. District Court for the Southern District of Illinois applying Maryland law, said only that "where a corporation is dissolved, whether voluntarily or involuntarily, the corporation's power to sue and be sued passes effectively into the hands of the corporate directors who stand as trustees of the assets of the corporation."[3] 2009 WL 4506298, at *4 (citing *FDIC v. Heidrick*, 812 F. Supp. 586, 592-93 (D. Md. 1991)). The *Newsom* Court's erroneous summation of § 3-410 as amended does not change the fact that the statute now distinguishes the legal positions of directors post-dissolution from that of director-trustees post-forfeiture. Without noting the change in law in 2004, Trustees argue that dissolution and forfeiture are effectively the same and that § 3-515 applies here. Their position is contrary to Maryland law and cannot be adopted.[4] The Complaint must be dismissed as to Robert Hileman for failure to state a claim.

---

[3] At issue in *Newsome* was whether the district court had federal diversity jurisdiction over a matter removed from state court. The district court considered Maryland corporate law only in connection with analyzing the citizenship of a dissolved Maryland corporation for diversity purposes. 2009 WL 4506298, at *4.

[4] Because the Court dismisses this matter as to Messrs. Hileman for ineffective service of process and failure to state a claim, the Court does not reach the parties' arguments regarding the existence of United Crane's corporate assets or recoverability of damages from Messrs. Hileman.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss, Dkt. 12. All claims against Robert Hileman will be dismissed for failure to state a claim, inasmuch as a director of a voluntarily-dissolved Maryland corporation can be sued only in the name of the corporation. It is not clear that Gary Hileman has been served properly but the Court will dismiss all claims against him as well. Granting Trustees time to accomplish service would be futile since Gary Hileman too merely was a director, has been sued in his individual capacity, and the reasoning for which there is no claim to be had against Robert Hileman personally applies equally to Gary Hileman. A memorializing Order accompanies this Memorandum Opinion.

/s/
ROSEMARY M. COLLYER
Date: October 23, 2013   United States District Judge